United Services Automobile Association, Appellant,

*v.*

The Hartford Accident & Indemnity Company,
Appellee.

414 S.W.2d 836.

(*Nashville,* December Term, 1966.)

Opinion filed April 21, 1967.

PIERCE WINNINGHAM, III, Nashville, for appellant.

STEPHENSON, LACKEY & HOLMAN, Nashville, for appellee.

MR. JUSTICE CRESON delivered the opinion of the Court.

This appeal comes from the Chancery Court of Davidson County, Tennessee.

On June 2, 1966, appellant, United Services Automobile Association, filed its original bill in that court. The original bill alleged that on March 7, 1965, United had in full force and effect a family automobile insurance policy covering Lt. Col. Jacob Helms. On the same date, the appellee, The Hartford Accident & Indemnity Company,

had in full force and effect a liability insurance policy covering U-Haul Rental Corporation of Murfreesboro, Tennessee.

Lt. Col. Helms, while driving a one and one-half ton Ford truck, which he had leased from U-Haul corporation's Louisville, Kentucky office, was involved in a serious automobile accident on Murfreesboro Road in Lavergne, Tennessee. As a result of this accident, three lawsuits were filed against Lt. Col. Helms; one by Mary Florence White, for personal injuries sustained in the aforementioned accident; one by Bart White, Jr., for personal injuries resulting from the accident, and one by Dr. Bart N. White, for property damage to his automobile with which Helms collided while it was being driven by Bart White, Jr. Also named a defendant in this lawsuit was the U-Haul Corporation.

The cases were tried in Murfreesboro, Tennessee, before the Rutherford County Circuit Court, on February 22 and 23, 1966. At the conclusion of the trial, judgments were entered; one in favor of Mary White for $23,111.77; one for Bart White, Jr. for $5,000.00, and one for Dr. Bart White for $344.70. All of the judgments were returned against Lt. Col. Helms. The actions against his co-defendant U-Haul Corporation were dismissed. On April 26, 1966, these judgments became final.

On May 18, 1966, a written demand was made by the appellant, United, upon the appellee, Hartford, to pay the judgments rendered against Lt. Col. Helms, in each case. The appellee, Hartford, refused to do so, and continues to refuse.

It also appears in the original bill that United States Fire Insurance Company had a policy of collision at the

time of the accident, covering Bart White, Sr. and his automobile. As a result of this coverage, United States Fire Insurance Company paid out $1,925.00 toward repair of Bart White, Sr.'s automobile involved in this collision. United States Fire Insurance Company now has a subrogation claim in the amount of $1,925.00 filed against Lt. Col. Helms, and has made demand for this amount. United Services Automobile Association, on May 18, 1966, made formal demand upon Hartford for the payment of this amount. Hartford again refused to pay.

It is also alleged that appellant United has expended large sums for attorneys' fees and court costs in the defense of Lt. Col. Helms, and they seek reimbursement from Hartford for the same. So far as the transcript indicates, the judgments have remained unpaid.

United Services Automobile Association prays for declaratory judgment that Hartford is primarily liable for the judgments rendered against Lt. Col. Helms; and that the United policy constitutes excess coverage only. They further pray for declaratory judgment for the payment by Hartford of United States Fire Insurance Company's subrogation claim, and that a judgment be entered in favor of United against Hartford for an amount covering attorneys' fees, court costs and other incidental expenses incurred by United in defense of these lawsuits.

The policy provisions to be construed are made exhibits to the original bill. United's policy provides coverage for liability sustained by the insured, Lt. Col. Helms, while driving a non-owned automobile with the permission of the owner, but such coverage purports to be limited by the following language:

*"Other insurance.* If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.''

Hartford's policy provides as follows:

"4. The first sentence of Insuring Agreement III—Definition of Insured, is amended to read:

III. Definition of Insured: With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'Insured' includes

(1) the named insured, and if the named insured is an individual, his spouse if a resident of the same household,

* * * * * *

(3) any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state which is applicable with respect to the accident out of which claim arises, is available to such person,''

* * * * * *

"5. 'Condition 1, Limits of Liability—Coverage A,' and 'Condition 2, Limits of Liability—Coverage C' are made subject to the following provision:

'Provided that with respect to a person described as insured under sub-paragraph (3) of Insuring Agreement III—Definition of Insured—and any person or organization legally responsible for the use of the automobile by such person, other than the named insured and any person or organization described in sub-paragraph (2) of Insuring Agreement III—Definition of Insured,'

\* \* \* \* \* \*

'(ii) the insurance under this policy shall not apply to any loss with respect to which the insured has other valid and collectible insurance unless the total amount of the loss exceeds the sum of the limits of liability of all other policies affording such other insurance and the company shall then be liable, subject to clause (i) foregoing only for the excess.' "

On July 11, 1966, Hartford filed a demurrer to the effect that under the provisions of the insurance policy just quoted, the policy issued by Hartford did not constitute "other valid and collectible insurance" within the meaning of the language of the policy issued by United, and that, therefore, United's original bill did not state a good cause of action. A second basis for demurrer was alleged as to the subrogation claim of United States Fire Insurance Company. This was that any suit upon such claim could not at that time be instituted for the reason that it would constitute a splitting of the cause of action of Bart White, Sr. On August 31, 1966, a decree was entered sustaining Hartford's demurrer. Appeal from this action has been timely perfected to this Court.

Appellant's assignment of error is as follows:

"The decree of the Chancery Court of Davidson County, Division II, sustaining the respondent's demurrer to the petitioner's original bill was erroneous."

Much authority in support of their respective positions is cited by both the appellant and the appellee. However, neither party, nor this Court, upon extended independent investigation, has found any Tennessee authority directly bearing upon the primary issue here involved. From a careful reading of the policy provisions previously quoted, this Court concludes that were it not for the other insurance policy, either of the policies here involved would provide coverage for the claims against Lt. Col. Helms. However, United's policy, where a non-owned automobile is involved, attempts to make its coverage secondary; that is, liable only for any excess judgment above policy limits of other valid and collectible insurance. Hartford's policy, in defining insured, states that it is not liable at all if there is other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits of the financial responsibility laws of the State involved.

A recent survey of this problem is contained in 7 Am. Jur.2d 544 (Automobile Insurance, Sec. 202). This text authority treats the problem of "other insurance" as breaking down into five situations, as follows:

"Many cases have arisen involving conflicts between insurance policies both of which purport to restrict or escape liability for a particular risk in the event that there is other insurance. Such conflicts have arisen, under automobile liability policies covering the same risk, in the following situations: (1) where one of the

policies contains an 'excess insurance' clause and the other contains a 'pro rata' clause; (2) where one of the policies contains an 'excess insurance' clause and the other a 'no liability' clause; (3) where both of the policies contain an 'excess insurance' clause; (4) where one of the policies contains a 'pro rata' clause and the other contains a 'no liability' clause; and (5) where a 'no liability' clause expressly designates the types of insurance with which it might conflict.''

The appellant in this case contends that the situation involved in the case presently before this Court is the situation presented by (2) in the above quote. The appellee contends that the situation here presented is that referred to in (5) of the above quote. Situation (2) is summarized as follows, in the authority just cited:

''In the second situation mentioned above—where one of the policies contains an 'excess insurance' clause and the other contains a 'no liability' clause—the conflict has been resolved in the greatest number of cases by imposing liability on the insurer issuing the policy containing the 'no liability' clause. The rationale for this holding has been that the policy constituting 'excess insurance' only did not provide other collectible coverage so far as the 'no liability' clause of the other policy was concerned. This view is not subscribed to by all the courts, however, and it has been held that the conflict between such clauses is irreconcilable, and that therefore the insurers should be compelled to prorate the loss between them.''

Situation (5) is further explained as follows:

''In the fifth situation—where the 'no liability' clause expressly provides that the insurance does not apply

to any loss covered by other specified types of insurance, including the 'excess insurance' type—it has been held that the insurance company whose policy so provides will be absolved from liability."

This same analytical approach is presented in annotation in 46 A.L.R.2d 1163.

This Court has attempted to collate all of the cases cited by the parties. The appellant relies principally on *Zurich General Accident & Liability Insurance Company v. Clamor* (C.C.A. 7-1942) 124 F.2d 717; *Grasberger v. Liebert & Obert, Inc.* (1939) 335 Pa. 491, 6 A.2d 925, 122 A.L.R. 1201; *Continental Casualty Company v. Curtis Pub. Co.* (C.C.A. 3-1938) 94 F.2d 710; *Travelers Indemnity Company v. State Automobile Insurance Company* (1941) 67 Ohio App. 457, 37 N.E.2d 198, and *New Amsterdam Casualty Company v. Certain Underwriters at Lloyds of London* (1966) 34 Ill.2d 424, 216 N.E.2d 665. All of these cases support the so-called majority view under the second situation referred to in 7 Am.Jur.2d, at 544. The appellee urges application of the cases of *Continental Casualty Company v. Weekes* (Fla. in 1954) 74 So.2d 367, 46 A.L.R.2d 1159, and *Continental Casualty Company v. Suttenfield* (C.C.A. 5-1956) 236 F.2d 433. These cases are exemplary of the fifth situation referred to in 7 Am.Jur.2d, Sec. 202.

In our judgment, the authorities previously mentioned leave the muchly vexed problem of "other insurance" in the field of casualty insurance in a state of near chaos. The principal result achieved is that the entire "other insurance" problem is fraught with potential conflict of interest and dubiety of coverage. We are not content to leave the Tennessee assured in any such morass as the

authorities heretofore mentioned have concocted. We are convinced that the ''other insurance'' provision of the policies here before us are in substantial measure repugnant to the general insurance provisions of the policies; and therefore void. It is entirely clear that the general insuring agreement of both policies with which we are here concerned afford coverage in the instant case to the assured, Col. Helms. Under the authorities urged upon us, it seems inescapable that the rights of the assured become badly obscured, if not defeated, by the contractual contest engaged in by casualty insurers.

After a careful consideration of all authorities available on this question, we have concluded that the best legal analysis is that contained in *Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., et al* (C.C.A. 9-1952) 195 F.2d 958. In that case, the following is said:

"It is plain that if the provisions of both policies were given full effect, neither insurer would be liable. The parties admit that such a result would produce an unintended absurdity, and each argues that the court must settle upon some way of determining which policy is primary and which secondary. Unfortunately there is no statute and there appear to be no decisions bearing on the subject in the jurisdiction in which the controversy arose, namely, Oregon.

We have examined cases in other jurisdictions cited by counsel where closely similar or substantially identical disputes between insurance companies have arisen. These decisions point in all directions. One group indicates that the policy using the word 'excess' is sec-

ondary and that containing the language of the Oregon policy is primary. Examples of these decisions are cited on the margin. Their reasoning appears to us completely circular, depending, as it were, on which policy one happens to read first. Other cases seem to recognize the truth of the matter, namely, that the problem is little different from that involved in deciding which came first, the hen or the egg. See remark of Judge Major in *Zurich General Accident & Liability Insurance Co. v. Clamor,* 7 Cir., 124 F.2d 717, 719. In this dilemma courts have seized upon some relatively arbitrary circumstance to decide which insurer must assume primary responsibility. Thus one group of cases fixes primary liability on the policy which is prior in date. Another group undertakes to decide which *policy* is the more specific, holding the one thought more specific to be primary. Another solution is represented by *Maryland Casualty Co. v. Bankers Indemnity Ins. Co.,* 51 Ohio App. 323, 200 N.E. 849, where it was held that the policy issued to the person primarily liable for the damage is the primary insurance. In sum, the cases are irreconcilable in respect both of approach and result.

(1) In our view it is immaterial which policy was written first; each was in effect when the accident occurred. The two policies appear to us to be equally specific, and no difficulty whatever would be encountered in applying either to the facts if the other did not exist. It is true that the U. S. F. & G. policy named Suter as the insured, and it was Suter's negligence that caused the accident. But Oregon's policy insured any person who might drive a car of the Redmond Motor Company with the latter's consent, and, as seen, Suter is an insured in this category.

(2-4) In our opinion the 'other insurance' provisions of the two policies are indistinguishable in meaning and intent. One cannot rationally choose between them. We understand the parties to concede that where neither policy has an 'other insurance' provision, the rule is to hold the two insurers liable to pro-rate in proportion to the amount of insurance provided by their respective policies. Here, where both policies carry like 'other insurance' provisions, we think must be held mutually repugnant and hence be disregarded. Our conclusion is that such a view affords the only rational solution of the dispute in this case. The proration is to be applied in respect both of damages and of the expense of defending the suits.''

See also *Gilkey v. Andrew Weir Insurance Company* (C.C.A. 9-1961) 291 F.2d 132.

It might be noted that one of the policies involved in the 9th Circuit Court of Appeals case contained a no-liability clause, and the other policy involved in that case contained an excess only clause, where there was other valid and collectible insurance.

█ It is the opinion of this Court that the provisions of the policies involved in the case presently before this Court are, like those involved in *Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co.*, supra, mutually repugnant. If one starts with United's policy and attempts to determine if the Hartford policy constitutes other valid and collectible insurance, one can only use the terms contained in Hartford's policy to determine if it is other valid and collectible insurance and, under the terms of Hartford's policy, it is not. If one starts with Hartford's policy and attempts to determine if United's policy is other valid and collectible insurance, one must con-

sider the terms of United's policy, and can only reach the conclusion that under the terms of United's policy, it is not other valid and collectible insurance. Therefore, both policies would appear to provide coverage.

It seems to us that the only reasonable result to be reached is a proration between the two insurance companies in proportion to thea mount of insurance provided by their respective policies. Included in the amount to be prorated will be the amount of reasonable attorneys' fees and court costs sustained in defending the lawsuits against Helms, and any other reasonable incidental expenses sustained in the defense of those suits.

■ As to the subrogation claim asserted by United States Fire Insurance Company, appellee's demurrer would seem to be well taken. Such a claim would constitute a splitting of the cause of action of Bart White, Sr. See *Globe & Rutgers Fire Insurance Company v. Cleveland* (1931) 162 Tenn. 83, 34 S.W.2d 1059, and *National Cordova Corporation v. City of Memphis* (1964) 214 Tenn. 371, 380 S.W.2d 793.

The judgment of the trial court is accordingly affirmed in part and reversed in part, and the cause remanded for further proceedings not inconsistent with this Opinion. The costs of this appeal are assessed against the parties equally.

BURNETT, CHIEF JUSTICE, DYER and CHATTIN, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.