## TENNESSEE FARMERS MUTUAL INSURANCE COMPANY v. CANAL INSURANCE COMPANY.
### —425 S.W.(2d) 762.

Eastern Section. November 7, 1967.

Rehearing Denied December 8, 1967.

Certiorari Denied by Supreme Court March 18, 1968.

2

Andrew Johnson and Erma G. Greenwood, Knoxville, Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, of counsel, for plaintiff in error.

James E. Foglesong, Knoxville, Poore, Cox, Baker & McAuley, Knoxville, of counsel, for defendant in error.

McAMIS, P.J. Canal Insurance Company filed its petition in the Circuit Court against Tennessee Farmers Mutual Insurance Company and others to have a declaration of its rights and liabilities under two of its policies issued to Robert Wayne Hodges protecting him among other things from public liability while driving a nonowned vehicle.

The petition alleges the two policies were limited to excess insurance over and above any other public liability insurance protecting Hodges, its insured, and that Hodges had such other insurance under a policy in the defendant Tennessee Farmers Mutual Insurance Company.

There was a trial before the Court without a jury resulting in an adjudication that Hodges was, in fact, insured under a policy issued by defendant Tennessee Farmers Mutual Insurance Company, hereinafter referred to as defendant, covering the 1964 Ford pick-up truck which Hodges was driving when he had a collision causing certain suits to be brought against him.

Defendant has appealed and assigned errors insisting Hodges, at the time of the accident, had purchased the truck and was driving it as his own and not by permission of its insured, Bunis Bailey, and that it is not in any way obligated to defend actions against Hodges or discharge any judgments which might be rendered against him.

4

It is to be seen the central and controlling issue before the Circuit Judge was whether or not Bunis Bailey prior to the accident had sold the truck to Hodges or whether, as petitioner Canal Insurance Company insisted, Hodges was driving the truck when the collision occurred by permission of Bailey so that under the terms of defendant's policy defendant would be obligated to defend the suits against Hodges.

Prior to April 8, 1965, Arville Bailey, a brother of Bunis Bailey, owned the truck in question but, because of his minority, the title was taken in the name of Bunis Bailey. Defendant's public liability policy was likewise taken in the name of Bunis Bailey. On that date there was owing on the truck to a finance company approximately $2,000.00. Faced with a call to military duty, Arville Bailey began talking to his cousin, Robert Wayne Hodges, several days prior to that date about selling him the truck.

These negotiations finally culminated in Hodges agreeing to buy the truck and in payment take over the payments due the finance company. However, Arville had made one payment of $80.00 after the discussion began and it was agreed Hodges would reimburse Arville for this payment he had already made. In addition it was agreed Hodges was to receive the rebate on a policy of collision insurance in the Service Insurance Company which was to be cancelled.

On April 8, 1965, Arville and Hodges went to Morristown where the finance company was located to effect a transfer of the title and the indebtedness owing on the truck. It was necessary to take Bunis Bailey along because the legal title to the truck was in his name.

When the finance company refused to allow the indebtedness to be transferred to Hodges, Hodges procured a check for $2,000.00 from his mother and delivered it to the finance company. The finance company, however, refused to release its lien and transfer title until the check cleared the bank. It was then agreed by all parties that when the check cleared, the finance company would mail the title to Hodges who would then present it to Bunis Bailey for his endorsement.

According to Hodges' testimony it was agreed the license plates would remain on the truck until title could be transferred and until that time he was to be permitted to drive the truck for pleasure but not for any business purpose. Bunis Bailey does not seriously question this statement. At the time of the trial Arville Bailey was in Germany and did not testify.

It was expected the check would clear and the title would be transferred within a few days after April 8, 1965, but apparently due to neglect on the part of the finance company, the title was not mailed to Hodges until late in May. In the meantime, before April 17, 1965, when Arville Bailey left to enter the service, Hodges paid him the $80.00 above mentioned and on May 14, 1965, while driving the truck on a camping trip Hodges was involved in the accident. Defendant was then notified. The policy had not been cancelled prior to the accident. Upon demand the finance company soon thereafter delivered the title to Hodges and it was endorsed to him by Bunis Bailey.

There is proof Bunis Bailey on one occasion prior to the accident asked Hodges for the license plates so that he could use them on an old car but was informed by

Hodges he had to have the plates in order to use the truck and that he could not get plates until he could get the title transferred.

Hodges testified he agreed with Arville Bailey that the license plates would remain on the truck and that Arville would keep the insurance until the title could be transferred. He further testified he did not consider the truck his and had possession only because he was given permission to drive it until he got the title—that he only drove the truck about three times before going on the camping trip. Bunis seems to have been uncertain whether the truck belonged to Hodges from and after April 8, 1965, when the finance company accepted Hodges' check and agreed to mail the title to him.

On the foregoing evidence the trial court ruled that legal title to the truck had not passed to Hodges and that he was driving the truck with the permission of Bailey, the owner, and was, therefore, entitled to protection under defendant's policy.

In support of its position, defendant relies principally on Home Indemnity Company v. Bowers, 194 Tenn. 560, 253 S.W.2d 750, 36 A.L.R.2d 668. That case involved only the question of insurance coverage under an omnibus clause where the policy holder had sold the car under a conditional sales contract and possession had passed to the conditional vendee prior to the involvement in an accident of the vehicle described in the policy. The Court held that although title had been retained by the policy holder his title thereafter was only as security for the debt, the equitable title being in the conditional vendee. The opinion then reasons that since the policy holder held the legal title only, the real title being in the conditional

vendee, the conditional vendor was without power to grant permission to the conditional vendee to drive and, therefore, the conditional vendee, in contemplation of the omnibus clause of the policy, was driving in his own right and not by permission of the policy holder.

Many courts hold, under the terms of particular statutes, that failure to comply with statutory requirements with respect to sale or transfer of a motor vehicle does not render the transfer or sale void as between the parties. Other statutes are held to make the transfer void with the result that no title passes. Anno. 94 A.L.R. 948; 7 Am.Jur.2d 628, Automobiles and Highway Traffic, Section 43.

Missouri appears to be aligned with states holding no title can be acquired except by complying with the statute regulating the transfer of title certificates. In Kelso v. Kelso, 306 S.W.2d 534, 71 A.L.R.2d 258, and cases cited the Supreme Court of Missouri held that one who purchased an automobile without obtaining a legal transfer of title had no insurable interest. The Court of Appeals of that state has held that where the statute has not been followed, the use of the automobile by the purported buyer is considered to be with the permission of the insured and to bring such use within the coverage of the omnibus clause. Haynes v. Linder, 323 S.W.2d 505.

Reece v. State, 197 Tenn. 383, 273 S.W.2d 475, holds that under the Tennessee statute, now T.C.A. sec. 59-1201, providing that the "Owner" of a motor vehicle is the person who holds the legal title, proof of registration in the name of the certified holder is generally "practically conclusive" of ownership. T.C.A. sec. 59-319 prescribes the requirements for transferring title by bill of sale where, as here, the certificate is being held by a lienor.

■ It is not necessary to hold that, as between the parties or even as affecting insurance under an omnibus clause of an insurance policy, the only valid transfer of title is one strictly according to the statute. Here, under the finding of the Circuit Judge in which we concur, the intention of the parties was to hold in abeyance the passing of legal title. We do not have here a case where the intention of the parties was to transfer title without a formal transfer of the certificate of title.

The express understanding of the parties that Hodges' use of the truck was to be limited to pleasure driving and that it was not to be used for business purposes indicates that the parties considered title had not passed. Otherwise, there would have been no reason or authority to limit use of the truck to pleasure.

Affirmed.

Cooper and Parrott, JJ., concur.

## OPINION ON PETITION TO REHEAR

McAMIS, P.J. Tennessee Farmers Mutual Insurance Company has filed a petition to rehear calling attention to our failure to respond to its insistence that liability should, in any event, be pro rated between it and defendant in error Canal Insurance Company. It is insisted the opinion of the Supreme Court in United Services Automobile Association v. Hartford Accident & Indemnity Company decided April 21, 1967, and reported at 220 Tenn. 120, 414 S.W.2d 836, fortifies this insistence.

We considered the question. The author of the opinion was remiss, however, in not specifically responding to this insistence.

We think the question must turn upon whether there is an irreconcilable conflict in the policies of the two companies such as was found to exist in United Services Automobile Association v. Hartford Accident & Indemnity Company, supra.

Petitioner Tennessee Farmers' policy provides that any person driving the insured vehicle with the permission of the owner should be included in the definition of "insured". It is then provided that, if the "insured" has other insurance against the liability insured against, Tennessee Farmers "shall not be liable for a greater proportion of such liability or loss than the applicable limit of liability bears to the total applicable limit of liability of all collectible insurance against such liability or loss." Under our previous holding, Hodges was driving with the permission of the owner and was, therefore, driving as an insured under the Tennessee Farmers policy.

At the time of the accident Hodges was insured against public liability under at least one of the Canal policies covering vehicles owned by himself and his wife. The "other insurance" provision of the Canal policies reads:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under insuring agreement V *shall be excess insurance over any other valid and collectible insurance.*" (Italicizing ours)

Except for the italicized portion of this policy provision in Canal's policies, it would seem there could be no reconciliation between the policies of the two companies, as in United Services etc., v. Hartford etc., supra. This language, however, must be given some meaning and effect unless repugnant to a corresponding provision in the Tennessee Farmers policy. It can not simply be read out of the Canal policies.

The Tennessee Farmers policy, in referring to "Other Insurance", makes no reference to "excess insurance" but merely provides for prorating the loss in event its insured is covered under another policy. Unquestionably it would be proper, under this provision of the policy, to pro rate the loss in event there are two valid policies covering the *vehicle* being operated by the insured at the time of the accident giving rise to a claim of liability.

"In the case of policies containing conflicting 'other insurance' provisions, where both policies have been issued to the same person and cover the same vehicle, it has been held that each company is required to share pro rata in the liability arising from an accident involving the insured vehicle, for the reason that 'excess' coverage clause is inoperative and cannot stand against the pro rata provision; but where each of the two policies is issued to different persons, one covering the owner of the insured vehicle and providing for pro rata liability in the case of other insurance, and the other covering the driver of a vehicle owned by another and providing only excess coverage as to him, the policy covering the owner is primary insurance and must bear the entire loss up to the policy limit, while the policy covering the driver is excess insurance which bears that part of the loss remaining after the primary insurance is exhausted."

Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 8, Section 345.13, p. 499.

It seems to us the Canal policies contemplate two separate situations, first, where two or more policies cover the insured vehicle and, second, where the insured is driving another car which is insured under another policy. In the first instance the liability is to be pro rated; in the second the Company is to be liable only for any liability of its insured in excess of any coverage on the other car which the insured may claim as the driver of such other vehicle.

There is no necessary conflict between the two policy provisions. Appleman on Insurance Law and Practice, Vol. 8, Section 4914, p. 400.

In connection with an annotation of 76 A.L.R.2d 505, after noting that there are a variety of factual situations as well as variations in policy terms in the decided cases, it is said:

"Despite the foregoing, the cases seem susceptible of a certain amount of generalization. Thus, if the nonowner-ship coverage offered by one of the policies involved is of the 'excess insurance' type, the conclusion is generally reached—no matter how various the reasoning adopted in support of it in the different cases may be—that the policy issued to the owner of the vehicle is the 'primary' policy, and the company issuing it is liable up to the limits of the policy without apportionment, although the policy contains a 'prorata' clause. To state the proposition in another way: if one policy has been issued to the owner of the vehicle causing damage, and another covers the same loss by virtue of the relationship to the accident of one who is not the vehicle owner, the latter's insurer,

at least where its coverage is of the 'excess insurance' variety, is in the favorable position and need not assume any of the loss, although the vehicle owner's policy contains a 'prorata' clause. As involving the foregoing factual pattern and reaching the conclusion indicated, reference is made to the following cases."

Following the above there appears a digest of cases from many states, as well as federal cases. These cases without exception appear to deny proration to the company having a policy on the involved vehicle providing for proration but not containing an excess insurance provision when the driver's policy provides for excess coverage. See also for general discussion, 7 Am. Jur.2d 544, 545.

In United Services Automobile Association v. Hartford Accident & Indemnity Company, supra, 220 Tenn. 120, 414 S.W.2d 836, United brought an action for declaratory judgment against Hartford to which Hartford filed a demurrer. The Chancellor sustained the demurrer and United appealed.

It appears Lt. Col. Helms had a policy covering his own automobile in United. While this policy was in force he leased a truck which was insured under a public liability policy in Hartford and while driving the truck he was involved in an accident. As a result certain judgments were obtained against him. Both companies declined liability, United claiming the "other insurance" provision in its policy made its liability secondary. Hartford claimed under the "other insurance" provision of the policy covering the truck it was not liable for any amount since the driver Helms had other insurance.

Hartford in that case occupied the same position as Tennessee Farmers in this case in that it had a policy

on the offending vehicle operated at the time by a non-owner. United occupied the position of Canal in this case in that its policy covered the driver of the offending vehicle by virtue of a provision in its policy obligating it to defend its policy holder while driving another vehicle. Under the terms of the two policies the Supreme Court, in an opinion by Mr. Justice Creson, held there was a repugnancy between the two policies and that the loss should be prorated between the two companies.

The United policy covering the driver, Lt. Col. Helms, while driving another vehicle with the permission of the owner, under the heading "Other insurance" contained a proration clause with the proviso that "the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

The Hartford policy covering the truck contained a provision undertaking to relieve it of all liability unless the loss exceeded the amount of all other insurance and in that event limiting its liability to the excess. Thus both undertook to limit liability to the excess over other valid and collectible insurance. On unassailable reasoning this was held to be such repugnancy as to make the provision in both policies void. As pointed out in the opinion as to which company should be let out depended upon which policy was read first. The Supreme Court concluded, under the circumstances, it was proper and right that both insurers should bear the loss.

The case here is different. In the Tennessee Farmers policy covering the truck involved in the collision there is no provision for "excess insurance", only a provision for proration. The Canal policies do contain such "excess

insurance'' provision. The question is: Can both policies, by a fair and reasonable construction, be given effect? We think they can.

■ It seems to us the language of the Canal policies above copied was intended to cover the situation here presented where the insured is driving another vehicle with the permission of the owner and becomes entitled to invoke the protection afforded by the owner's policy. On the other hand, if the insured should incur liability while driving the vehicle described in the policy and in so doing should be covered by another policy the provision for proration would apply. So, we think there is no conflict between the two provisions and, since the Canal policies have an excess insurance provision and the Tennessee Farmers policy does not, there is no repugnancy between the coverage of the two policies.

■ The principle of proration in the law of insurance is designed to equalize the burden between compensated insurers of identical risks. See 8 Appleman Insurance Law and Practice, Sec. 4911.

It results from the foregoing that the petition to rehear must be denied.

Cooper and Parrott, JJ., concur.