IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2025 Session

# HG JONES, LLC v. JORDAN HOWELL ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 80775     Darrell Scarlett, Judge**

_____

**No. M2024-00654-COA-R3-CV**
_____

At issue is a purely legal question, the interpretation and application of "other insurance" clauses in two respective insurance policies that determine which policy provides primary coverage and which provides excess coverage to the property management company in the underlying premises liability action. HG Jones, LLC, d/b/a Real Property Management Solutions ("HG Jones"), is the manager of property owned by Jordan Howell ("Mr. Howell"). Both are defendants in the underlying premises liability action. HG Jones is the named insured under a Commercial General Liability Policy issued by Auto-Owners Insurance Company ("Auto-Owners"). Mr. Howell is the named insured in a Dwelling and Personal Property Coverage Policy issued by The Cincinnati Insurance Company ("Cincinnati"). In this action, HG Jones sought a declaration that Cincinnati had a duty to defend and indemnify HG Jones in the premises liability action as the primary insurer because HG Jones qualifies as an "insured" as that term is defined in the Cincinnati policy. For its part, Cincinnati claimed that its policy only provides excess coverage over HG Jones Auto-Owners' policy based, inter alia, on the "other insurance" clauses in the two policies and the fact that HG Jones was not specifically listed as an "additional insured" under the Cincinnati policy. The parties filed competing motions for judgment on the pleadings. The trial court determined that there was no legal distinction between the terms "insured" and "additional insured" and HG Jones was an insured under the Cincinnati policy. Therefore, the court ruled that Cincinnati had the primary duty to defend and indemnify HG Jones in the premises liability action. Cincinnati appeals. We have determined that the "other insurance" clauses set forth in the two policies must be deemed void because they are mutually repugnant. Because HG Jones is the named insured under the Auto-Owners' policy and HG Jones is an insured under the Cincinnati policy by virtue of the definition of an "insured" under that policy, both policies afford HG Jones primary coverage. Thus, the duty to defend and indemnify HG Jones in the premises liability action must be prorated between Cincinnati and Auto-Owners. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**

**Reversed and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

E. Jason Ferrell and Hannah J. Leifel, Nashville, Tennessee, for the appellant, The Cincinnati Insurance Company.

James Barger, Murfreesboro, Tennessee, for the appellee, HG Jones, LLC, d/b/a Real Property Management Solutions.

## OPINION

### FACTS AND PROCEDURAL HISTORY

In March 2021, Laila Ali ("Ms. Ali") allegedly slipped and fell while walking down the front steps of a residential rental property[1] owned by Jordan Howell and managed by HG Jones. In February 2022, Ms. Ali sued both Mr. Howell and HG Jones in the underlying rental property slip and fall case of *Laila Ali v. Jordan Howell, HG Jones LLC, Real Property Management Solutions*, Rutherford County Circuit Court, Case No. 79491.

Prior to Ms. Ali's fall, HG Jones and Mr. Howell entered into a property management contract ("the Management Contract") for the management of Mr. Howell's rental property. The Management Contract reads, in pertinent part:

> HOLD HARMLESS & INDEMNITY-HOMEOWNER'S POLICY: The Owner agrees to hold the Manager its agent, independent contractors, and employees, harmless from all damage suits or claims in connection with the management of said property, except in the case of gross negligence or illegal act by the Manager, and from all Liability for injuries to person or property suffered or sustained by any person whomsoever. Owner agrees to carry, at Owner's own expense, public liability insurance (homeowner's insurance) in sufficient amounts to protect the interest of parties hereto, and policies shall be written to protect the Manager in the same manner and the same extent as the Owner. Owner shall have Manager designated on said policy as an additional insured. Owner agrees to indemnify Manager for any damages suffered as a result of any lapse in or failure by Owner to maintain insurance coverage. Owner agrees to indemnify and hold Manager harmless from any and all claims, causes of action, suits and damages arising out of or relating to the selection of a vendor to perform work on the property.

---

[1] The property is located at 1824 Herald Lane, Murfreesboro, Tennessee.

Pursuant to the Management Contract, HG Jones made a formal demand to Mr. Howell that he indemnify and defend HG Jones in the underlying lawsuit brought by Ms. Ali. When Mr. Howell and his insurer Cincinnati refused, HG Jones instituted the instant action requesting the court to declare that Mr. Howell was obligated to "indemnify and hold [HG Jones] harmless from the pending action in Rutherford County Circuit Court Case #79491, pursuant to the [Management Contract]."[2]

On July 19, 2023, HG Jones amended its complaint to add Cincinnati as a defendant. The amended petition sought a declaration that Cincinnati was the primary insurer of HG Jones and, as such, had a duty to defend HG Jones in the underlying litigation. HG Jones requested that Cincinnati pay its reasonable and necessary attorney's fees and costs incurred to date in the underlying litigation. Cincinnati responded by filing an answer as well as a counterclaim.

At the time of Ms. Ali's fall, Cincinnati insured Mr. Howell under a Dwelling and Personal Property Coverage Policy while Auto-Owners provided coverage to HG Jones under a Commercial General Liability Policy. Both policies contained "other insurance" clauses. Cincinnati's "other insurance" clause provided that its coverage was excess unless another valid policy was written specially to afford excess coverage, in which case its policy would be primary. Auto-Owners' "other insurance" clause provided that it was primary except when, *inter alia*, the insured had been added as an "additional insured" on "any other primary insurance covering liability for damages arising out of the premises or operations[.]" While HG Jones was *not* specifically listed on the Cincinnati policy as an "insured", a "named insured", or an "additional insured," it is undisputed that HG Jones qualified as an "insured" as that term is defined in the Cincinnati policy because HG Jones was acting as Mr. Howell's "real estate manager" when Ms. Ali's claim accrued.[3]

In August 2023, Cincinnati filed an answer and counterclaim contending that it had no duty to defend HG Jones. Cincinnati admitted that HG Jones qualified as an "insured" under its policy; however, it claimed that being an "insured" is distinct from being an "additional insured." Because HG Jones had not been specifically added as an "additional insured" under its policy, Cincinnati claimed that its policy was excess while Auto-Owners' policy was primary.

HG Jones countered arguing that that the language of Cincinnati's policy makes no distinction between "insured" and "additional insured" for purposes of excess or primary coverage determination. Because HG Jones qualified as an insured under the Cincinnati

---

[2] The contractual claims against Mr. Howell are not at issue in this appeal.

[3] Cincinnati's policy defines "insured" as including "Any person . . . or any organization while acting as 'your' real estate manager."

policy, as the term "insured" is defined in the Cincinnati policy, it argued that the Cincinnati policy was primary, while the Auto-Owners' policy was excess.

Thereafter, both parties filed motions for judgment on the pleadings asserting that the other provided primary coverage. On March 25, 2024, the trial court granted HG Jones' motion and denied Cincinnati's motion. After quoting the relevant portions of the two policies, the trial court made the following findings of fact and conclusions of law:

1. Both policies have "escape clauses" where each policy claims excess coverage and any other policy provides primary coverage.
2. The Auto-Owners policy is excess over any other primary insurance available to its insured, and the Cincinnati policy provides essentially the same but with different language.
3. The Cincinnati policy appears to be primary here as there is no reason to treat the property owner and property manager differently as they are both insured under the Cincinnati policy.
4. The Court makes no distinction between an "insured" and an "additional insured" as those terms may appear in the policies and/or were argued at hearing or in briefs submitted to the Court.
5. Auto-Owners will provide HG Jones with excess coverage because Cincinnati will provide HG Jones with primary coverage.
6. Because Cincinnati affords HG Jones with primary coverage, it has a duty to defend HG Jones in litigation styled Laila Ali v. Jordan Howell and HG Jones, LLC d/b/a Real Property Management Solutions, pending in the Rutherford County Circuit Court, Case No. 79491 ("Underlying Litigation").
7. Because Cincinnati has a duty to defend HG Jones, Cincinnati is obligated to reimburse HG Jones for the reasonable attorney's fees and costs incurred by HG Jones in defense of the Underlying Litigation from the date that HG Jones provided actual notice to The Cincinnati Insurance Company of its demand for defense. HG Jones and Cincinnati stipulate that $2,000.00 reflects the amount of such attorney fees and costs. Such amount payable within thirty (30) days of this Order unless matter appealed.

This appeal by Cincinnati followed.

ISSUES

Cincinnati raises one issue on appeal with two subparts. It reads[4]:

Whether the trial court erred in denying Cincinnati's motion for judgment on the pleadings based upon the interpretation of two non-conflicting "other insurance" provisions and ruling that Cincinnati's policy provides primary coverage over HG Jones' own insurance policy when:

a. HG Jones' own policy provided primary coverage unless HG Jones was "added as an additional insured" on other valid insurance, and

b. The trial court declined to make a distinction between being "added as an additional insured" on Cincinnati's policy and qualifying as an "insured" under the standard "Who is An Insured" provision of Cincinnati's policy.

HG Jones raises two substantively similar issues:

1. Did the trial court correctly rule that Cincinnati's insurance policy shall provide primary coverage when HG Jones is considered an insured under Cincinnati's policy and when HG Jones' policy only provides excess coverage if their insured has been added as an insured on other valid insurance?

2. Did the trial court correctly find that there is no distinction between an "insured" and an "additional insured" as those terms may appear in the policies, such that Cincinnati's policy is primary?

## STANDARD OF REVIEW

In the case at bar, each party filed cross-motions for judgment on the pleadings. "A motion for judgment on the pleadings 'is filed pursuant to Tennessee Rule of Civil Procedure 12.03 and is similar to a motion to dismiss for failure to state a claim except that it is made after an answer is filed rather than before.'" *Auxin, LLC v. DW Ints., LLC*, No. M2022-01087-COA-R3-CV, 2024 WL 274699, at *5 (Tenn. Ct. App. Jan. 25, 2024) (quoting *Edwards v. Urosite Partners*, No. M2016-01161-COA-R3-CV, 2017 WL 1192109, at *3 (Tenn. Ct. App. Mar. 30, 2017)) (citations omitted). "A motion for judgment on the pleadings involves the consideration of nothing other than what its title suggests; the motion requests that a court grant judgment based on the pleadings alone." *Harvey v. Shelby Cnty.*, No. W2018-01747-COA-R3-CV, 2019 WL 3854297, at *4 (Tenn. Ct. App. Aug. 16, 2019) (quoting *Sakaan v. FedEx Corp. Inc.*, No. W2016-

---

[4] In their respective briefs, the parties refer to each other as the Appellant and the Appellee. We have chosen to refer to the parties by their respective names.

00648-COA-R3-CV, 2016 Tenn. App. 2016 WL 7396050, at *5 (Tenn. Ct. App. Dec. 21, 2016)). "Judgment on the pleadings may be granted when 'the moving party is clearly entitled to judgment.'" *Henderson v. Dwayne*, No. M2024-00270-COA-R3-CV, 2025 WL 658788, at *5 (Tenn. Ct. App. Feb. 27, 2025*) (quoting *Family Trust Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 296 (Tenn. 2024)). We review the trial court's decision on such motions de novo with no presumption of correctness. *See id.*

"[C]ourts should [generally] construe insurance policies in the same manner as any other contract." *Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 610 (Tenn. Ct. App. 2011) (citing *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000)). "An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006) (citing *Parker v. Provident Life & Acc. Ins. Co.*, 582 S.W.2d 380, 383 (Tenn. 1979)). "The policy language must be taken and understood in its plain, ordinary, and popular sense." *Lancaster*, 397 S.W.3d at 610 (citing *Hutchison*, 15 S.W.3d at 814). Our role, then, is to review the trial court's interpretation of the insurance policies' contractual language de novo with no presumption of correctness. *See id.* (citing *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007)).

## ANALYSIS

This appeal requires us to interpret two "other insurance" clauses in the insurance policies of Cincinnati and Auto-Owners to determine which insurer must defend and indemnify HG Jones in the underlying litigation as the primary insurer. Cincinnati insists that, when the two "other insurance" clauses are read together, Auto-Owners' policy is primary, and Cincinnati's policy is excess. HG Jones argues the inverse.

For the reasons set forth below, we conclude that the "other insurance" clauses in the respective policies of Cincinnati and Auto-Owners are mutually repugnant and must be voided in favor of a proration of damages because "[i]f we were to . . . give effect to each of these . . . clauses, we would be required to conclude that neither policy provided primary coverage." *Federal Ins. Co. v. Atlantic Nat. Ins. Co.*, 25 N.Y.2d 71, 75 (1969).

"Other insurance" clauses are used by insurers to limit an insurer's liability where other insurance may cover the same injury or loss. *Shelter Mut. Ins. Co. v. State Farm Fire & Cas. Co.*, 930 S.W.2d 570, 572 (Tenn. Ct. App. 1996). Traditionally, "other insurance" clauses fall into one of the following three categories: (1) pro rata, (2) excess, or (3) escape.[5] *Id.* An "excess clause" provides that the subject policy will cover liability only to the extent that liability exceeds the limit of the other policy covering the same injury or

---

[5] Variations of these three categories have developed over time, including "'excess/escape clauses, super-escape clauses, super-escape/reduced limit clauses, super-excess clauses . . . [and] pro rata/excess clauses.'" *Sentry Select*, 2021 WL 4352537, at *4 n.5 (quoting Susan Randall, *Coordinating Liability Insurance*, 1995 Wis. L. Rev. 1339, 1359 (1995)).

loss. *Id.* Because each of the "other insurance" clauses at issue provide that the coverage will be "excess" over another valid policy covering the same loss, they are properly characterized as excess clauses. *See id.*

"'Other insurance' clauses 'originated in the property insurance context to eliminate the supposed "moral hazard" which would ensue where the insured was able to obtain two or more policies insuring the subject property for an amount in excess of its worth.'" *Sentry Select Ins. Co. v. Tenn. Farmer's Mut. Ins. Co.*, No. M2020-00110-COA-R3-CV, 2021 WL 4352537, at *9 (Ct. App. Sep. 24, 2021) (quoting 15 Couch on Ins. § 219:1 (3d ed. 2021)). These clauses generally serve to prevent "payment of a disproportionate amount of a loss shared with another insurer." *Id.* (quoting 15 Couch on Ins. § 219:1).

But while "other insurance" clauses "may be well-intentioned," they "are often problematic." *Id.*; *see, e.g.*, *Jones v. Medox, Inc.*, 430 A.2d 488, 490–91 (D.C. 1981). As this court has previously noted,

> [T]his is an area in which hair splitting and nit picking has been elevated to an art form. "Other insurance" clauses have been variously described as: "the catacombs of insurance policy English, a dimly lit underworld where many have lost their way," a circular riddle, and "polic[ies] which cross one's eyes and boggle one's mind."

*Id.* at 9–10 (quoting *South Carolina Ins. Co. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 489 S.E.2d 200, 201–02 (S.C. 1997)). When two "other insurance" clauses conflict, "the resulting 'contractual contest' often causes an insured's rights to 'become badly obscured, if not defeated.'" *Landmark Am. Ins. Co. v. Heco Realty, LLC*, No. 21-5858, 2022 WL 3585634, at *9 (6th Cir. Aug. 22, 2022) (quoting *United Servs. Auto. Ass'n v. Hartford Accident & Indem. Co.*, 414 S.W.2d 836, 840 (Tenn. 1967)).

To resolve a conflict between two "other insurance" clauses, we "must first ask which policy, if any, provides primary coverage." *Id.* at *10 (quoting *Shelter*, 930 S.W.2d at 572) (internal quotation marks omitted). Tennessee courts follow the majority approach, resolving "coverage disputes . . . on a case by case basis." *Sentry Select*, 2021 WL 4352537, at *7. This approach presumes "that 'other insurance' clauses are not necessarily repugnant," and "shall [be] construe[d] . . . [to] give effect to the contracting parties' intent by focusing on the plain and ordinary meaning of the words. *Sentry Select*, 2021 WL 4352537, at *6–7 (citing *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001)). Nevertheless, and despite the presumption against mutual repugnancy:

> [W]hen strict construction of "other insurance" clauses results in the conclusion that no primary coverage exists, courts are quick to strike down both "other insurance" clauses as repugnant to each other. This is true, for example, when two policies each have excess clauses as to the same event so

that each attempts to pass primary responsibility for coverage on to the other company. On the other hand, when it is clear from a reading of the two competing policies which policy is primary, there is no need for courts to intrude because the general rules of contract come into play.

*Shelter*, 930 S.W.2d at 572. In this case, it is anything but clear from a reading of the two competing policies which policy is primary.

Stated differently, if the "other insurance" clauses cannot be read "in harmony to determine which insurance was intended as the primary insurance," they "are mutually repugnant to one another and . . . will be deemed void in favor of a proration of damages." *Id.* (citing *United Servs.*, 414 S.W.2d at 840); *see also* INSURANCE CLAIMS & DISPUTES: REPRESENTATION OF INSURANCE COMPANIES & INSUREDS § 7:3 (Allan D. Windt, 6th ed. 2024) ("The majority rule is to 'treat the [excess] policies as providing insurance at the same level' because it 'avoids having the court choose, based on factors that are often arbitrary or extrinsic to the terms of the policies, which policy is primary.'").

The Court of Appeals of New York has aptly described the justification for this approach as follows:

> If we were to . . . give effect to each of these . . . clauses, we would be required to conclude that neither policy provided primary coverage. But that would be a logical impossibility since, quite obviously, there can be no excess insurance absent a policy providing primary coverage and, in the absence of such other policy, each would be primary. To give effect to the excess clause in either of the policies would defeat the similar provision in the other and it follows, therefore, that the excess clauses operate to cancel out each other, both coverages must be treated as primary and each company is obligated to share in the cost of the settlement and the expenses.

*Federal Ins. Co.*, 25 N.Y.2d at 76.

Here, the Cincinnati "other insurance" clause states:

### 8. Other Insurance – Coverage L – Lessors Liability

This insurance is excess over any other valid and collectible insurance except insurance written specially to cover as excess over the Limits of Insurance that apply in this policy.

Conversely, the Auto-Owners' "other insurance" clause states in pertinent part:

### 4. Other Insurance

- 8 -

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, [Auto-Owners'] obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b. Excess Insurance**

(1) This insurance is excess over . . . (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

For its part, Cincinnati points to the use of the word "primary" in the Auto-Owners' policy to indicate that it was written to provide primary coverage with certain limited exceptions, including when another policy provides primary coverage. Cincinnati claims that its policy is not primary because Cincinnati provides only excess coverage with one exception—when the other insurance is written specifically to afford excess coverage. And, Cincinnati contends, Auto-Owners' policy is not written specifically to afford only excess coverage, because, again, it is written to afford primary coverage unless another policy is primary.[6] The Auto-Owners' policy contains the word "primary," but HG Jones argues that it does so for the purpose of specifically detailing when the policy will be primary and when it will be excess.

HG Jones argues that the Auto-Owners' policy is limited to excess coverage while Cincinnati is obligated to provide the primary coverage. HG Jones relies on the Auto-Owners' policy, specifically Section IV – General Liability Conditions, which, as noted above, states that its policy "is excess over . . . Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." Thus,

---

[6] "This argument is a circular one which begs the question it purportedly answers." *Trailer Conditioners, Inc. v. Huddleston*, 897 S.W.2d 728, 731 (Tenn. Ct. App. 1995).

Auto-Owners contends its coverage is excess when other primary insurance is available covering the insured. Accordingly, HG Jones argues that primary coverage is afforded under the Cincinnati policy because (1) the alleged liability arises from damages related to the premises and (2) HG Jones is considered an "insured" under the Cincinnati policy because it was serving as HG Jones' real estate manager at the time.[7]

The trial court agreed with HG Jones' arguments finding, that there was no reason to treat Mr. Howell, the property owner, differently from HG Jones, the property manager, given that they are both considered "insureds" under Cincinnati's policy. The trial court also held:

1. Both policies have "escape clauses" where each policy claims excess coverage and any other policy provides primary coverage.
2. The Auto-Owners policy is excess over any other primary insurance available to its insured, and the Cincinnati policy provides essentially the same but with different language.
3. The Cincinnati policy appears to be primary here as there is no reason to treat the property owner and property manager differently as they are both insured under the Cincinnati policy.

Cincinnati disagrees with the trial court's reasoning. It argues that the trial court erred in interpreting the "other insurance" provision in its policy as providing primary coverage to HG Jones because the plain and ordinary meaning of the provision dictates that the Auto-Owners' policy affords primary coverage. However, if we disagree with this argument, it argues that "insured" and "additional insured" have distinct legal meanings. And, because HG Jones was not specifically added as an "additional insured" under its policy, the Cincinnati policy is not primary. Therefore, it argues, Auto-Owners' provision providing excess coverage to those qualifying as additional insureds under another policy does not apply here.

We note, however, that Cincinnati relies on cases from other jurisdictions to support its assertion that there is a legal distinction between the terms "insured" and "additional insured," which in turn affects whether its policy is primary or excess.[8] Generally, Tennessee courts do not recognize an inherent legal distinction between the rights of a named insured and an additional insured under the same policy. *See Lancaster*, 397 S.W.3d at 617 (finding that the parties should have explicitly crafted an insurance policy limiting the rights of an insured versus an additional insured if that was what they wished to accomplish); *Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F.Supp.3d 1025,

---

[7] As noted earlier, Cincinnati's policy defines "insured" as including "Any person . . . or any organization while acting as 'your' real estate manager."

[8] The term "additional insured" is not defined in either policy.

1038 (E.D. Tenn. 2017) (endorsing *Lancaster* and stating, "[i]f a policy provision applies to an 'insured,' then by the policy's terms it applies with the same force to an additional insured"). Thus, the trial court was correct in declining to make a distinction between an "insured" and "additional insured." *See Lancaster*, 397 S.W.3d at 617. Nevertheless, we do not find this holding dispositive of the issue at hand.

We agree with the trial court's determination that the two "other insurance" provisions contain terms that are similar in substance but different in language. However, we disagree with its designation of Cincinnati as the sole primary insurer because we conclude that the "other insurance" provisions are "mutually repugnant." This is because the two clauses read together create "a circular riddle." *See Sentry Select Ins. Co.*, 2021 WL 4352537, at *9-10. Moreover, strict construction of the two clauses would result in the conclusion that no primary coverage exists. As noted earlier in this opinion, "courts are quick to strike down coexisting "other insurance" clauses as repugnant to each other." *Shelter*, 930 S.W.2d at 572. Because the "other insurance" clauses at issue are mutually repugnant, neither is effective and both must be deemed void in favor of a proration of damages. *See id.* at 572; *Sentry Select*, 2021 WL 4352537, at *7; *United Servs.*, 414 S.W.2d at 841.

HG Jones is the named insured under the Auto-Owners' policy. Moreover, HG Jones is an insured under the Cincinnati policy by virtue of the definition of an "insured" under that policy. Accordingly, we hold that both policies afford HG Jones primary coverage. Thus, the duty to defend and indemnify HG Jones in the *Ali* premises liability action, as well as the expense, must be prorated between Cincinnati and Auto-Owners. *See Shelter* at 572; *see also Shelter*, 930 S.W.2d at 572 ("[W]henever two "other insurance" clauses conflict they are repugnant, and thus, the court must void the clauses and prorate the damages.") (citing *Lamb–Weston, Inc. v. Oregon Auto. Ins. Co.,* 219 Or. 110, 341 P.2d 110, 119 (1959)).

Therefore, we reverse the order granting HG Jones' motion for judgment on the pleadings as well as the order denying Cincinnati's motion and remand with instructions to prorate the costs to defend the underlying premises liability action between Cincinnati and Auto-Owners.

## CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion. Costs of this appeal are assessed one-half to the appellant, The Cincinnati Insurance Company, and one-half to the appellee, HG Jones, LLC, d/b/a Real Property Management Solutions.

_____
FRANK G. CLEMENT JR., P.J., M.S.