SHELTER MUTUAL INSURANCE COMPANY and Shelter Insurance Companies, Plaintiffs/Appellees,

v.

STATE FARM FIRE AND CASUALTY COMPANY and State Farm Insurance Companies, Defendants/Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

April 19, 1996.

Permission to Appeal Denied by Supreme Court Sept. 9, 1996.

James D. Madewell, Kenneth S. Williams, Cookeville, for defendants/appellants.

Daniel H. Rader, III, John E. Jones, Cookeville, for plaintiffs/appellees.

*OPINION*

LEWIS, Judge.

This case involves two liability insurance companies. Plaintiff/appellee, Shelter Mutual Insurance Company and Shelter Insurance Company ("Shelter"), insured David Roland under a homeowner's policy. Defendant/appellant, State Farm and Casualty and State Farm Insurance Company ("State Farm"), provided coverage under a church liability policy issued to Trinity Assembly of God ("Trinity"). State Farm appeals the trial court's order granting summary judgment in favor of Shelter. The parties generally agree on the pertinent facts which are as follows.

Shelter insured David Roland under a homeowner's policy. The policy included a boat owner's endorsement with maximum limits of $300,000.00. The policy also contained a pro rata "other insurance" clause. State Farm insured Trinity under a church policy of insurance with limits of $1,000,000.00. This policy contained an excess "other insurance" clause.

Trinity is located in Putnam County, Tennessee. In June 1992, it sponsored a church related outing at Center Hill Lake for the church youth. David Roland, a member of Trinity, was operating a boat owned by him when the leg of Elizabeth Ann Holloway, a fourteen year-old passenger, became entangled in a rope attached to an inner tube being pulled behind the boat. As a result, Ms. Holloway was pulled overboard and a portion of her left leg was amputated.

In February 1993, Ms. Holloway, through her parents, and Mr. Roland, through appel-

lee as his insurer, filed a joint petition in the Circuit Court for Putnam County. The petition sought a settlement of all of Ms. Holloway's claims on behalf of Roland, Trinity, Shelter, and State Farm. The court approved a structured settlement to be paid by Shelter. The settlement relieved both Roland and Trinity from further liability to Ms. Holloway.

Following approval of the settlement, Shelter instituted the instant suit in the Chancery Court for Putnam County. Shelter requested the court to declare that State Farm was responsible for payment of a pro rata portion of the $300,000.00 paid by Shelter under the terms of the settlement. Shelter sought, in that action, to void the "other insurance" provisions of both the State Farm and the Shelter policies under the theory that the clauses were repugnant.

State Farm admitted that David Roland was an insured under the terms of its policy and that the policy covered the accident. State Farm also admitted that the $300,000.00 settlement made by Shelter was fair, reasonable, and made in good faith. State Farm denied coverage, however, insisting that, under the "other insurance" provisions of its policy, it was obligated to furnish excess coverage only and that excess coverage did not come into play unless and until Shelter's primary coverage had first been fully exhausted.

Both insurance companies filed motions for summary judgment. After considering the entire record including various affidavits, depositions, copies of the insurance policies, and legislative history transcripts, the court granted summary judgment in favor of Shelter. The order stated, in part, as follows:

> It appeared to the court that the pro-rata insurance clause in the [Shelter] policy and the excess clause in the [State Farm] policy were mutually repugnant and that the coverages should be pro-rated. It further appeared to the Court that [Shelter] had paid Three Hundred Thousand ($300,000.00) Dollars toward the settlement of this case which were the policy limits. It appeared to the Court that the State Farm general liability policy had One Million ($1,000,000.00) Dollars in coverage avail-

able. It, therefore, appeared to the Court, based upon pro-ration, that [Shelter] would owe the fraction $300,000.00/$1,300,000.00 or .23076 of the settlement and that [State Farm] would owe the fraction $1,000,000.00/$1,300,000.00 or .76923 of the loss or Two Hundred Thirty Thousand, Seven Hundred Sixty–Nine and 23/100 ($230,769.23) Dollars.

The chancellor then entered judgment against State Farm in the amount of $230,769.23 with prejudgment interest of $36,423.59 for a total judgment of $267,192.82.

State Farm's first issue is "whether Tennessee law ignores the written expressions of intention in separate insurance policies and deems competing primary and excess 'other insurance' clauses to be repugnant and void as a matter of law."

The pro rata clause in the Shelter policy is as follows: "If both this and other insurance apply to a loss, we will pay our share. Our share will be the appropriate amount that this insurance bears to the total amount of all applicable insurance." The "other insurance" clause of the State Farm policy provides: "The insurance provided under Coverage L–Business Liability is excess insurance over any other insurance not written by us which would apply if this policy had not been written."

It is State Farm's contention that, because the settlement with Ms. Holloway did not exceed the scope of Shelter's coverage limits, State Farm had no obligation to reimburse Shelter for a portion of the settlement amount. State Farm also argues that the "other insurance" clauses in the two policies are not repugnant, that Shelter's policy was intended as a primary policy, and that the two "other insurance" clauses are in harmony and can co-exist under Tennessee law. In its brief, State Farm asserts that "only when expressions of intention in separate insurance policies create situations where no primary coverage is in effect for the insured will competing primary and excess 'other insurance' clauses be deemed repugnant and void as a matter of law." It then states as follows:

An analysis of law in the context of competing 'other insurance' provisions illustrates the focus on policy language to ascertain which policy is intended to be primary and which is intended to be secondary. Only when dual policies contain like 'other insurance' provisions, neither of which provide primary coverage to an insured, are such provisions deemed mutually repugnant.

Over the years, courts have grappled with the determination of how to allocate damages when two separate policies cover an insured involved in an accident. This determination is not an easy one to make because insurance policies often contain "other insurance" clauses. Insurance companies use these clauses to define the sum they will pay in the event that multiple insurance policies cover the same injury. The "other insurance" clauses traditionally break down into the following three types: 1) pro rata clauses, such as the one found in Shelter's policy, provide that, in the event other insurance is available, the loss will be prorated between the insurance policies; 2) excess clauses, such as the one found in State Farm's policy, provide that, in the event other insurance is available, the subject policy will cover liability only to the extent its coverage is in excess of the other policy limits; and 3) escape clauses provide that, in the event other insurance is available, the subject policy will not cover any liability.

The guiding principle when analyzing such policies is the determination of which policy provides primary coverage. When strict construction of "other insurance" clauses results in the conclusion that no primary coverage exists, courts are quick to strike down both "other insurance" clauses as repugnant to each other. This is true, for example, when two policies each have excess clauses as to the same event so that each attempts to pass primary responsibility for coverage on to the other company. On the other hand, when it is clear from a reading of the two competing policies which policy is primary, there is no need for courts to intrude because the general rules of contract come into play.

There are two lines of reasoning used by the courts when analyzing this issue. The majority rule is "that where there are two applicable insurance policies, one containing a pro rata clause and the other an excess clause, the provisions of each will be interpreted to give effect to the intent of the contracting parties." *Jones v. Medox, Inc.,* 430 A.2d 488, 493 (D.C.App.1981). The second line of reasoning is that whenever two "other insurance" clauses conflict they are repugnant, and thus, the court must void the clauses and prorate the damages. *Lamb–Weston, Inc. v. Oregon Auto. Ins. Co.,* 219 Or. 110, 341 P.2d 110, 119 (1959).

In *Lamb–Weston,* a lessee's employee drove a leased vehicle and crashed it into a warehouse. The owner/lessor of the vehicle had a pro rata "other insurance" clause in his insurance policy, and the employer/lessee's policy had an excess "other insurance" clause. The *Lamb–Weston* court held as follows: "In our opinion, whether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto." *Id.* As such, Oregon courts will hold that both policies provide primary coverage on a pro rata basis. *Id.* 341 P.2d at 118.

A key case relied upon by the Oregon Supreme Court in *Lamb–Weston* was *Oregon Auto Insurance Co. v. United States Fidelity & Guaranty Co.,* 195 F.2d 958 (9th Cir.1952). In *Oregon Auto* the driver's policy had an excess "other insurance" clause and the owner's policy had an exclusionary or exculpatory "other insurance" clause. In that situation, a repugnancy did exist because both insurers could have avoided primary liability to their insured leaving their insured with no coverage even though two companies had each issued a policy. As stated by the court in *Oregon Auto:* "It is plain that if the provisions of both policies were given full effect, neither insurer would be liable. The parties admit that such a result would produce an unintended absurdity...." *Oregon Auto Ins. Co.,* 195 F.2d at 959. The court went on to state "where both polices carry like 'other insurance' provisions, [they] must be held mutually repugnant and hence be disregarded." *Id.* at 960. Neither the facts

in *Lamb–Weston* nor the facts in the instant case involve like "other insurance" clauses.

While *Oregon Auto* was correct in its logic, interpretation, and ruling based upon the express language of the two policies and the competing types of "other insurance" clauses, the *Lamb–Weston* court went one step further, ignored the clear, consistent, and unambiguous language of the policies, and rendered a blanket rule that "other insurance" provisions were null and void in all circumstances.

The *Jones* case, which explains the majority view, involved a pro rata clause and an excess clause. The issue in the case was whether the court should attempt to reconcile and to interpret the clauses to give effect to the intentions of the parties or whether it should simply apply the *Lamb–Weston* rule. *See Jones*, 430 A.2d at 489. The court decided the majority rule was the better approach. *Id.* at 493. It then analyzed the facts of the case using the majority rule and concluded that the pro rata clause and the excess clause were not repugnant. Next, the court held the insurance company using the pro rata clause liable for the amount covered by the company's policy limit and held the insurance company using the excess clause liable for any damages which exceeded the policy limit. *Id.* at 494–95.

In reaching its decision, the *Jones* court discussed the criticisms of the *Lamb–Weston* rule. It properly labeled the *Lamb–Weston* line of cases as situations where courts "abandon all attempts to discern the intent of the contracting parties where there are dissimilar 'other insurance' clauses and take the position that all 'other insurance' clauses, regardless of their nature, are mutually repugnant, requiring proration of liability." *Id.* at 492. A second flaw in the application of the *Lamb–Weston* rule noted by the court was as follows: "Courts applying the *Lamb–Weston* rule ignore a basic rule of contracts requiring consideration of all the language in a policy provision to determine its meaning and intent." *Id.* In addition, the court pointed out that application of the *Lamb–Weston* rule may substantially impact the insurance industry and the policy rates charged to consumers. The *Lamb–Weston*

rule introduces a new item of uncertainty into the equation. This uncertainty likely results in duplications of claim investigation, claim supervision, and settlement and defense costs. Such duplication may increase the cost of each claim as well as the ultimate increase in premiums paid by all policy holders. *Id.* at 493.

The Kentucky Court of Appeals in *Hartford Insurance Co. v. Kentucky Farm Bureau Insurance Co.*, 766 S.W.2d 75 (Ky.App. 1989), adopted the majority view and designated the pro rata policy in that case as the primary insurance policy. In adopting the majority view, the court, relying on the *Jones* decision, pointed out that a criticism of *Lamb–Weston* was that it "ignores a basic rule of contracts by failing to consider all of the language in a policy to determine its meaning and intent." *Hartford Ins. Co.*, 766 S.W.2d at 77. Further, the Kentucky court noted that when courts apply the minority repugnancy rule, they are effectively "legislating pro rata apportionment whenever a policy has a 'other insurance' clause and legislation is not a proper judicial function." *Id.*

The Tennessee Supreme Court has addressed this issue in several cases all of which involved automobile liability policies which contained "other insurance" clauses. *State Farm Ins. Co. v. Taylor*, 511 S.W.2d 464 (Tenn.1974) (involving a pro rata and an excess clause); *Continental Ins. Co. v. Insurance Co. of N. Am.*, 224 Tenn. 306, 454 S.W.2d 709 (1970) (involving two excess clauses); *Commercial Union Ins. Co. v. Universal Underwriters, Inc.*, 223 Tenn. 80, 442 S.W.2d 614 (1969) (involving an excess and a pro rata clause); *United Servs. Auto. Ass'n v. Hartford Accident and Indem. Co.*, 220 Tenn. 120, 414 S.W.2d 836 (1967) (involving an excess clause and an escape clause). *But see Tennessee Farmers Mut. Ins. Co. v. Canal Ins. Co.*, 58 Tenn.App. 1, 425 S.W.2d 762 (1967) (finding that it could give both of the "other insurance" clauses effect and distinguishing *United Servs. Auto Ass'n*). In 1967, the supreme court adopted the view expressed in *Oregon Auto*. *United Servs. Auto Ass'n.*, 414 S.W.2d at 840. Later, in 1969, the court expressly adopted the reasoning of *Lamb–Weston*. *Commercial Union*

*Ins. Co.*, 442 S.W.2d at 618. Thus, in the cases cited above, the court applied the blanket rule of *Lamb–Weston*, determined that the "other insurance" clauses were repugnant, and prorated the damages.

In response to the court's decision in *Continental Ins. Co.*, the Tennessee General Assembly enacted legislation which superseded the court's decisions. 1973 Tenn.Pub.Acts ch. 209 (currently codified at Tenn.Code Ann. § 56–7–1101 (1994)). This statute designated which insurance policy provides primary insurance coverage in all cases arising out of the use of motor vehicles. The legislative history of this act demonstrates the General Assembly's desire that the courts attempt to apply the provisions of insurance policies as they are written. In a 1 May 1973 discussion of the act, Representative McWilliams stated as follows:

> This is a bill the necessity of which was brought about by a court decision in the case of [*Continental Insurance Co. v. Insurance Company of North America*] . . . .
> The confusion has been brought about because of a court decision between two insurance companies in which they said that irrespective of the provisions of the policy, [liability] should be pro rated between the two insurance companies. . . .
> [This act] would require the Supreme Court of this state to follow the provisions of that policy, those policies.

Given the fact that the General Assembly's actions superseded the court's decisions, at present, this court is left without binding authority. In other words, this is essentially a case of first impression.

It is the opinion of this court that the better approach is that explained in the *Jones* opinion. Not only is this the approached followed by a majority of the courts, but it also allows the courts to consider the fact of individual cases as opposed to applying a blanket rule. Moreover, there is evidence that the supreme court no longer agrees wholeheartedly with the *Lamb–Weston* rule. *See Continental Ins. Co. v. Excel Ins. Co.*, 541 S.W.2d 952 (Tenn.1976). In *Continental,* the supreme court decided a case involving two insurance policies. The 1973 Public Act did not apply, however, because the policies were issued prior to May 1973. *Id.* at 953. In deciding the case, the supreme court noted the decisions adopting the *Lamb–Weston* rule, but made the following conclusion:

> We have examined with care the provisions of the two insurance policies exhibited to the stipulation in the present case, however, and we do not find that they are repugnant or in conflict. For that reason, we are of the opinion that the pre–1973 cases are not applicable, and that the appellant is not entitled to the proration which it claims.

*Id.* at 954. Finally, although the legislative history of Tennessee Code Annotated section 56–7–1101 is not binding on this court, it is our opinion that it is persuasive authority in favor of adopting the majority view.

By a plain reading of the written terms of Shelter's policy, it is clear that Shelter's policy will always provide primary coverage for an insured event. We contrast this plain language of the Shelter policy whereby, in the event any other insurance exists, State Farm's coverage will be deemed excess only. Rather than being repugnant, these two clauses mesh perfectly, consistently, and harmonize in all circumstances. No situation exists where the other insurance provisions of the respective policies will not harmonize leaving a gap in coverage. Therefore, we are unable to find a reason to say that these provisions are repugnant.

Therefore, it results that the judgment of the trial court is reversed, and the cause is remanded to the trial court for any further necessary proceedings. Costs on appeal are taxed to the plaintiff/appellee.

CANTRELL and KOCH, JJ., concur.