METHODIST HEALTHCARE, formerly known as Methodist Health Systems, Inc.; Methodist Healthcare—Memphis Hospitals d/b/a University Hospital, formerly known as Methodist Hospitals of Memphis—Central Hospital, Plaintiffs,

v.

AMERICAN INTERNATIONAL SPECIALTY LINE INSURANCE COMPANY, Defendant.

No. 03–2106 D/V.

United States District Court, W.D. Tennessee, Western Division.

March 30, 2004.

Richard E. Charlton, III, Esq., The Winchester Law Firm, Memphis, TN, for Plaintiffs.

H. Frederick Humbracht, Jr., Esq., Boult Cummings Conners & Berry, Nashville, TN, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DONALD, District Judge.

Before the Court is Defendant American International Speciality Line Insurance Company's motion for summary judgment in this declaratory judgment action. Plaintiffs Methodist Healthcare and University Hospital (collectively "Methodist") request a declaratory judgment as to Defendant's responsibility to defend and indemnify Methodist in an underlying insurance coverage dispute ongoing in the Circuit Court of Shelby County, Tennessee. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the following reasons, the Court **DENIES** Defendant's motion for summary judgment.

## I. BACKGROUND

Methodist is a Tennessee not-for-profit corporation that delivers medical services in Shelby County, Tennessee. Defendant is an insurance carrier authorized to do business in Tennessee. Defendant issued a Not-for-profit Individual and Organization Insurance Policy Including Employment Practices Liability Insurance to Methodist ("Policy") for the policy period of May 31, 1999 through June 1, 2002. Methodist also carried an Excess Hospital

Professional/Commercial General Liability Insurance Policy from Professional Underwriters Insurance Company ("Professional Underwriters") from June 1, 1999 to June 1, 2001.

On August 23, 1999, Dr. Melvin Hobbs delivered Mariah Bowen at one of Methodist's facilities. Subsequently on August 3, 2000, Bowen's mother filed suit ("Bowen I") on her behalf in the Circuit Court for Shelby County, Tennessee against Methodist, Dr. Hobbs, and others, alleging that Bowen suffered severe injuries due to Dr. Hobbs's malpractice. Professional Underwriters defended Methodist in the action. The state court dismissed the case as to Methodist, but it granted a default judgment against Dr. Hobbs for $11,000,000.

On October 17, 2001, Bowen's mother filed a second suit ("Bowen II") on Bowen's behalf in the Circuit Court of Shelby County against Methodist, asserting that Methodist was negligent in allowing Dr. Hobbs to practice at Methodist Hospital resulting in the severe and permanent injuries to Bowen. The action centers around Methodist's credentialing process, where its agents furnish staff privileges to non-employee physicians so they may practice at Methodist medical facilities. Professional Underwriters currently defends Methodist in Bowen II without a reservation of rights. Methodist also provided notice of Bowen II to Defendant, but Defendant denied coverage, citing the language of the Policy.

The parties do not dispute that the Policy provides insurance coverage to Methodist in the event of a wrongful act, including defects in the peer review or credentialing processes. The dispute predominantly concerns the Policy's exclusion of claims involving bodily injury.

Methodist filed the instant action, requesting a declaratory judgment that its Policy with Defendant provides coverage for its claim regarding Bowen II. Defendant moved for summary judgment on January 12, 2004, arguing that Methodist's claim is not within the language of the Policy. Methodist responded on February 27, 2004.

## II. STANDARDS

### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 35 (2d ed.1998).

Facts must be presented to the court for evaluation. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir.1999). The court may consider any material that would be

admissible or usable at trial. 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2721, at 40 (2d ed.1998). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir.1999).

■ In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 460 (6th Cir.2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. *Kalamazoo River*, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

### B. Insurance Contract Interpretation

■ Construing insurance contracts is a matter of law. *Harrell v. Minn. Mut.*

*Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996). Like other contracts, insurance contracts should be construed so as to give effect to the intention and express language of the parties. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn.1993). Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. *Id.* at 649 (citing *Moss v. Golden Rule Life Ins. Co.*, 724 S.W.2d 367, 368 (Tenn.Ct.App.1986)). Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. *Tata*, 848 S.W.2d at 649 (citing *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn.1991)).

■ When two separate policies exist and cover the same incident, the "guiding principle" when analyzing such policies is the determination of which policy provides primary coverage. *See Shelter Mut. Ins. Co. v. State Farm Fire & Cas. Co.*, 930 S.W.2d 570, 572 (Tenn.Ct.App.1996). Courts will not interfere when the policies delineate which policy is primary, but courts generally strike both "other insurance" clauses as conflicting when strict construction of the clauses results in the conclusion that no primary coverage exists. *Id.*

### III. ANALYSIS

■ Defendant argues that the Policy's exclusion of coverage for claims of bodily injury prevents it from covering Methodist's claim. The Policy states that Defendant "shall not be liable to make any payment for Loss in connection with a Claim made against the Insured ... for bodily injury, sickness, disease, death of any person," or damage to property. (Def.'s Mot. for Summ. J., Ex. at 9–10.) Applying the quoted language to the instant case,

"Loss" refers to a state court judgment against Methodist, and "Claim" refers to the Bowen II complaint. (*See id.* at 5–6 (defining terms).) The exclusion read alone seems to defeat coverage, since Bowen II deals with bodily injury. When read in concert with the many other exclusions, it becomes clear that the other exclusions concern wrongful acts, as defined in the Policy. Methodist's claim for coverage does not concern a wrongful act but instead concerns a claim connected to bodily injury. Furthermore, the Policy was modified through the addition of Endorsements. Endorsement Four provides:

> The following exclusion, 4(n), is added to the policy: 4(n) alleging, arising out of, based upon, or attributable to the Organization or an individual Insured's performance or rendering of or failure to perform or render medical or other professional services or treatments for others, provided however, that this exclusion shall not operate to limit coverage for Employment Practices Claims or Non Employment Discrimination Claims, or to matters arising out of peer review or credentialing processes.

(*Id.* at 23–24.) The quoted exclusion explicitly includes all claims for defects in credentialing of professionals rendering medical services. Under the body of the Policy, claims relating to bodily injury may be excluded, but under the Policy as amended by Endorsement Four, claims relating to peer review or credentialing are covered, regardless of whether they relate to bodily injury or not. Looking at the Policy as a whole, the bodily injury exclusion is subject to two reasonable interpretations. The Court, therefore, finds the bodily injury exclusion to be ambiguous.

■ In the event of ambiguous language, courts are directed to construe that language against the insurance company and in favor of the insured. *See Tata,* 848

S.W.2d at 649. A reasonable interpretation of the bodily injury exclusion provides for coverage, so Defendant may not defeat coverage. The Court holds that Methodist has created a genuine issue of material fact as to coverage under the Policy for its Bowen II claim.

■ Defendant also argues that exclusion 4(c) applies, disallowing any claims "alleging, arising out of . . . or to the same or Related Wrongful Act alleged or contained, in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which . . . it may succeed in time." (Def.'s Mot. for Summ. J., Ex. at 6.) Defendant argues against coverage because Bowen I was reported to Professional Underwriters, which it defended without a reservation of rights. After the end of that case and before the filing of Bowen II, the Professional Underwriters policy period ended. Therefore, Defendant claims to be the successor to that policy and reads its own Policy to disallow claims in which it is the successor insurer. Defendant supports its argument with the fact that "Professional Underwriters is defending [the second action] under the provision of its policy relating to interrelated wrongful acts." (Def.'s Mot. for Summ. J. at 12.) Defendant would like the Court to determine that Bowen II is an interrelated wrong under the Policy and unworthy of coverage because Professional Underwriters has defined Bowen II as an interrelated wrong under its policy.

Defendant's argument is unconvincing, as Professional Underwriters' determination under its own policy is irrelevant and unpersuasive to this Court. Professional Underwriters is not a party in this action, it operates under an entirely different policy, and its decision to defend Methodist in the state action is immaterial. Moreover, the fact that Professional Underwriters

currently defends Methodist in Bowen II undercuts Defendant's assertion that it is a successor insurer. Instead, Professional Underwriters and Defendant are concurrent insurers of Methodist. (*See* Supp. Br. on Behalf of Pls. in Resp. to Def.'s Mot. for Summ. J. at 2 (detailing that Professional Underwriters insures larger coverage with a $1,500,000 deductible and Defendant insures smaller coverage with a $200,000 deductible).) Bowen II is not an amended complaint, but a wholly new complaint with a new theory of recovery. Bowen's first complaint did not implicate credentialing, but credentialing is central to Bowen's second complaint. Accordingly, Defendant may not defeat coverage through the Policy's related wrong exclusion.

■ Finally, Defendant argues that the Policy's "other insurance" clause defeats complete coverage. The clause provides, "[t]his policy shall be specifically excess of any other policy pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss." (Def.'s Mot. for Summ. J., Ex. at 15.) Under that language, Defendant claims to be the excess coverage provider, with Professional Underwriters being the primary coverage provider. Defendant reads the Policy's "other insurance" clause as conflicting with the Professional Underwriters policy's similar clause solely on Professional Underwriters' duty to defend.

The Court directs Defendant's attention to Endorsement Eight providing, "Insurer shall have both the right and duty to defend and appoint an attorney to defend any Claim against any Insured alleging a Wrongful Act." (*Id.* at 28.) Accordingly, Defendant's argument is internally inconsistent and lays no basis for the Court to find that Defendant is merely an excess insurer under the Policy, even if such a determination were proper at this stage.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Defendant failed to show that no genuine issue of fact exists as to its duty to provide coverage to Methodist in the underlying lawsuit. Accordingly, the Court **DENIES** Defendant's motion for summary judgment.

**IT IS SO ORDERED** this ___ day of _____ 2004.