# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 3, 2021 Session

## SENTRY SELECT INSURANCE COMPANY v. TENNESSEE FARMER'S MUTUAL INSURANCE COMPANY ET AL.

### Appeal from the Circuit Court for Macon County
### No. 2016-CV-104      John D. Wootten, Jr., Judge

### No. M2020-00110-COA-R3-CV

This is an action to declare the rights and responsibilities of Sentry Select Insurance Company ("Sentry") and Tennessee Farmer's Mutual Insurance Company ("Farmer's Mutual"). At issue is the meaning of the "other insurance" clauses in the respective policies—whether one of the carriers is the primary insurer or whether the coverage should be prorated. When the insured filed claims against both carriers for a loss in excess of one million dollars in farm equipment, each carrier insisted the other was the primary insurer. Following a hearing on cross motions for summary judgment, the trial court reasoned that the two-year gap between the insured's purchase of the Sentry policies and subsequent purchase of the Farmer's Mutual policy demonstrated that the Sentry policies were intended to be primary, and the Farmer's Mutual policy was intended to be excess, "particularly in light of the clear unambiguous language of the [Farmer's Mutual] 'Other Insurance' clause." Thus, the court granted summary judgment in favor of Farmer's Mutual and this appeal followed. Having realized, as other courts have, that "other insurance" clauses are problematic, in that, they have elevated hair splitting and nit picking to a new art form, and having done some hair splitting and nit picking ourselves, we affirm the trial court but on other grounds. Reading the Sentry and Farmer's Mutual "other insurance" clauses together, we have determined that the Sentry policies were intended as primary and the Farmer's Mutual policy was intended as excess. Accordingly, we affirm the trial court's ruling that Sentry is the primary carrier.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Robert F. Johnson and Douglas M. Raines, Milwaukee, Wisconsin, and Nathaniel K. Cherry, Nashville, Tennessee, for the appellants, Sentry Select Insurance Company.

Arthur E. McClellan, Gallatin, Tennessee, for the appellees, Tennessee Farmer's Mutual Insurance Company, Terry W. Jenkins, John Deere Credit Services, Inc., d/b/a, John Deere Financial.

**OPINION**

In April 2014, Terry W. Jenkins ("Jenkins"), who owns a farm in Macon County, Tennessee, purchased nine pieces of farm equipment from Wright Implement I, LLC and financed the purchase through John Deere & Company. Shortly following, Jenkins insured the farm equipment for $1,233,800 through three policies issued by Sentry.[1] The Sentry policies listed John Deere & Company and John Deere Credit Services, Inc. ("Deere Credit Services") as the additional insured and stated that "[t]he additional insured's interest shall be the unpaid loan balance or lease payments including accrued interest, insurance charges, or other loan or lease charges as of the time of 'loss.'"

Over the next two years, Jenkins became concerned that the Sentry policies did not adequately protect his equity in the farm equipment. Therefore, on February 2, 2016, Jenkins added the nine pieces of farm equipment to an existing Farmer's Mutual policy that provided coverage for Jenkins' farm. The amendment to the existing Farmer's Mutual policy provided coverage for the farm equipment in the amount of $1,226,600. Because Farmer's Mutual insured Jenkins' farm, the policy listed Jenkins and the farm mortgagee, Farm Credit Services of Mid-America ("Farm Credit"), as the insureds.[2]

On March 16, 2016, a fire destroyed the farm equipment, an equipment shed, and a travel home. After Jenkins filed a claim with Sentry and Farmer's Mutual for the total loss of the farm equipment, neither Sentry nor Farmer's Mutual disputed that their policies covered the claim, but they disagreed as to which was responsible for primary coverage. Farmer's Mutual subjected Jenkins to an Examination Under Oath wherein Jenkins explained that it was his intent that the Sentry policies would provide primary coverage and the Farmer's Mutual policy would pay the excess. To temporarily settle the dispute, Sentry and Farmer's Mutual each agreed to pay one half of Jenkins' claim for a total of $1,158,500 under a reservation of rights. More specifically, Sentry and Farmer's Mutual agreed to divide Jenkins' loss with respect to the nine pieces of farm equipment equally

---

[1] As a financing requirement of John Deere & Company, Jenkins acquired the Sentry insurance policies to protect the purchase money security interest of Deere & Company and his personal interest. The three Sentry policies contain substantially similar provisions and provide what is known in the industry as Commercial Inland Marine coverage.

[2] Terry W. Jenkins et ux., Shayron A. Jenkins, are the named insureds under the Farmer's Mutual policy, and the sole mortgagee/loss payee is Farm Credit.

and pay Jenkins and Deere Credit Services to the extent of their interest in the equipment. The two insurance companies paid the claim without any prejudice to or waiver of the rights of either and agreed to have the coverage issues determined in court, with the successful party being indemnified to the extent the court determined one carrier was primary and the other excess. Acting according to their agreement, each carrier remitted $579,250.00.[3]

Shortly thereafter, Sentry made a formal demand to Farmer's Mutual to "reimburse Sentry $579,250.00 it paid to Deere & Co." When Farmer's Mutual refused, Sentry commenced this action in Macon County Circuit Court seeking a declaration that Farmer's Mutual was the primary insurer and Sentry was secondary. Farmer's Mutual filed an answer and countercomplaint. Thereafter, the parties filed cross motions for summary judgment.

The disagreement centered on the interpretation of the "other insurance" clauses in the policies. Specifically, each policy provided that coverage would be limited if there was other insurance covering the same loss or injury. And each insurance company argued that under its respective "other insurance" clause, if there was other insurance, the other insurance would be primary.

The "other insurance" clause in Sentry's policy is divided into two subsections and reads as follows:

**F. Other Insurance**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

The "other insurance" clause in the Farmer's Mutual policy reads as follows:

---

[3] Acting pursuant to their agreement, on June 30, 2016, Farmer's Mutual paid Jenkins and Farm Credit the sum of $579,250.00 for the John Deere farm equipment. Then, on July 13, 2016, Sentry paid Deere Credit Services the sums of $285,625.00 and $293,625.00 for the equipment.

**Other Insurance**

Insurance provided by this endorsement is excess over any other insurance and will apply only if the limits of all other insurance have been exhausted solely by payment of loss. However, if other insurance is specifically written as excess insurance over the insurance provided by this endorsement, the limits of this insurance shall apply first.

In its motion, Sentry argued that because the Farmer's Mutual policy had different terms, conditions, and provisions from the Sentry policy, subsection two of Sentry's "other insurance" clause applied, and Sentry was only responsible for the excess. Sentry argued the Farmer's Mutual policy could be read harmoniously with the Sentry policy because Farmer's Mutual provided that in the event the other insurance was specifically written as excess insurance, as was the case here, the Farmer's Mutual policy was primary.

Conversely, Farmer's Mutual contended that its policy was intended as excess insurance—the only exception being when the other insurance policy was "specifically written as excess insurance **over the insurance provided by this endorsement**." (Emphasis added). Farmer's Mutual argued that the Sentry policies could not have been specifically written as excess insurance over the Farmer's Mutual policy because the Sentry policies were written two years before the Farmer's Mutual policy. Farmer's Mutual further contended that, should the court find that both policies were written as excess insurance, then Tennessee caselaw dictated that the result be a proration of both damages and expenses between the two insurance companies. *See United Servs. Auto. Ass'n v. Hartford Acc. & Indem. Co.*, 414 S.W.2d 836, 840 (Tenn. 1967).

After a hearing on the motions, the court concluded:

The Court is of the opinion that the approximate[ly] two (2) year gap between Terry Jenkins' purchase of three (3) Sentry Select policies; and, subsequent purchase of the [Farmer's Mutual] policy clearly demonstrates that the Sentry Select policies were intended to be "primary" and the [Farmer's Mutual] policy was intended to be excess, particularly in light of the clear unambiguous language of the [Farmer's Mutual] "Other Insurance" clause.

Thus, the court granted Farmer's Mutual summary judgment motion and denied Sentry's. This appeal followed.

## ANALYSIS

Sentry contends the trial court erred in determining that it provided primary coverage for Jenkins' insurance claim. Specifically, Sentry contends that, according to

Tennessee law, the timing of the two policies is immaterial; instead, the analysis is strictly limited to a construction of the language in the respective policies, and when the policies are read together, Farmer's Mutual is primary and Sentry is excess. For its part, Farmer's Mutual argues that its policy cannot be interpreted as primary insurance by the policy's terms or in light of the surrounding circumstances.

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.* Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Because issues related to the interpretation of insurance policies involve legal rather than factual questions, summary judgment is an appropriate means to resolve such disputes. *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 147 (Tenn. Ct. App. 2001).

In this case, we address "some important, but not intriguing, questions" that arise when there are multiple insurance policies covering the same injury or loss. *See Progressive Express Ins. Co. v. Ferris*, 312 So.3d 112, 113 (Fla. Dist. Ct. App. 2020). "Other insurance" clauses "originated in the property insurance context to eliminate the supposed 'moral hazard' which would ensue where the insured was able to obtain two or more policies insuring the subject property for an amount in excess of its worth." 15 Couch on Ins. § 219:1 (3d ed. 2021). Thus, the general purpose of these clauses is to prevent "payment of a disproportionate amount of a loss shared with another insurer."[4] *Id.*

Though they may be well-intentioned, these clauses are often problematic. *See, e.g.*, *Jones v. Medox, Inc.*, 430 A.2d 488, 490–91 (D.C. 1981). As the South Carolina Supreme Court opined,

> [t]his is an area in which hair spitting and nit picking has been elevated to an art form. "Other insurance" clauses have been variously described as: "the catacombs of insurance policy English, a dimly lit underworld where many have lost their way," a circular riddle, and "polic[ies] which cross one's eyes and boggle one's mind."

*South Carolina Ins. Co. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 489 S.E.2d 200, 201–02 (S.C. 1997) (citations omitted).

---

[4] Insurers use "other insurance" clauses to coordinate coverage such that "the insurer best able to classify and rate the risk bears primary responsibility for it." Susan Randall, *Coordinating Liability Insurance*, 1995 Wis. L. Rev. 1339, 1369 (1995).

"Other insurance" clauses typically fall into one or more of the following three categories:

> 1) pro rata clauses…provide that, in the event other insurance is available, the loss will be prorated between the insurance policies; 2) excess clauses…provide that, in the event other insurance is available, the subject policy will cover liability only to the extent its coverage is in excess of the other policy limits; and 3) escape clauses provide that, in the event other insurance is available, the subject policy will not cover any liability.

*Shelter Mut. Ins. Co. v. State Farm Fire & Cas. Co.*, 930 S.W.2d 570, 572 (Tenn. Ct. App. 1996).[5]

"When strict construction of 'other insurance' clauses results in the conclusion that no primary coverage exists, courts are quick to strike down both 'other insurance' clauses as repugnant to each other." *Id.* The Tennessee Supreme Court first addressed this issue in *United Services Automobile Association v. Hartford Accident & Indemnity Company*, which involved two excess clauses. 414 S.W.2d at 837–38. The Court determined that the two clauses could not be reconciled and discussed how other jurisdictions had resolved such issues:

> In this dilemma courts have seized upon some relatively arbitrary circumstance to decide which insurer must assume primary responsibility. Thus one group of cases fixes primary liability on the policy which is prior in date. Another group undertakes to decide which Policy is the more specific, holding the one thought to be more specific to be primary. Another solution is . . . that the policy issued to the person primarily liable for the damage is the primary insurance. . . .

*Id.* at 840 (quoting *Oregon Auto. Ins. Co. v. U.S. Fidelity & Guaranty Co.*, 195 F.2d 958, 960 (9th Cir. 1952)). In considering the above approaches, the Tennessee Supreme Court agreed with the Ninth Circuit Court of Appeals that "it [was] immaterial which policy was written first" as long as both were in effect at the time of the injury or loss. *Id.* (quoting *Oregon Auto. Ins. Co.*, 195 F.2d at 960). Additionally, it found that both policies at issue in *United Services* were equally specific and "indistinguishable in meaning and intent." *Id.* (quoting *Oregon Auto. Ins. Co.*, 195 F.2d at 960). Thus, the Tennessee Supreme Court

---

[5] Although courts generally classify "other insurance" clauses into three basic categories, variations have developed over the years, such as, "excess/escape clauses, super-escape clauses, super-escape/reduced limit clauses, super-excess clauses. . . [and] pro rata/excess clauses." Randall, *supra*, at 1359.

determined that "the only reasonable result to be reached is a proration between the two insurance companies in proportion to the amount of insurance provided by their respective policies."[6] *Id*. at 841.

Nearly three decades later, this court was presented with two dueling "other insurance" clauses—a pro rata and excess pairing. *Shelter Mut. Ins. Co.*, 930 S.W.2d at 570. We conducted a thorough review of cases in Tennessee and other jurisdictions, addressing "other insurance" clauses, and in doing so, we identified two approaches taken by the courts when analyzing this issue. *Id.* at 572.

One approach was adopted by the Oregon Supreme Court in *Lamb-Weston, Inc. v. Oregon Automobile Insurance Company*, 341 P.2d 110, 119 (Or. 1959). The *Lamb-Weston* court found, when examining cases in other jurisdictions, that the decision regarding which insurance policy was primary and which was secondary often depended on which policy was read first. *Id*. at 116. Thus, to avoid this circularity of reasoning, the *Lamb-Weston* court "rendered a blanket rule" that "other insurance" clauses were necessarily repugnant and should, in every instance, be deemed void in favor of a proration of damages. *Shelter*, 930 S.W.2d at 573; *Lamb-Weston*, 341 P.2d at 119. The obvious benefit to a blanket rule in these cases was that it allowed for a quicker and cleaner resolution to the dispute. But we noted in *Shelter* that the drawback to applying such a rule was that it also allowed courts to, in effect, legislate "pro rata apportionment whenever a policy has a[n] 'other insurance' clause." 930 S.W.2d at 573 (quoting *Hartford Ins. Co. v. Kentucky Farm Bureau Ins. Co*., 766 S.W.2d 75, 77 (Ky. Ct. App. 1989)). And, as this court correctly acknowledged, "legislation is not a proper judicial function." *Id.* (quoting *Hartford Ins. Co*., 766 S.W.2d at 77).

Another approach, adopted by the District of Columbia Court of Appeals in *Jones v. Medox, Inc*., stood for the proposition that "other insurance" clauses were not necessarily repugnant; it depended on the language used in the respective policies. *Jones*, 430 A.2d at

---

[6]Here, the Court rejected Minnesota's approach—the "total insuring intent test":

> In accordance with this test, where two policies contain competing excess other insurance clauses which cannot be resolved by the logic of their terms, the insurer whose coverage was effected for the primary purpose of insuring the particular risk should be primarily liable for payment, with the insurer whose coverage was most incidental to risk being liable last. Application of this test requires courts to consider which policy specifically described the accident-causing instrumentality, which premium is reflective of the greater contemplated exposure, and whether one policy contemplated the risk and use of the accident-causing instrumentality with greater specificity than the other.

15 Couch on Ins. § 219:49; *see Auto Owners Ins. Co. v. Northstar Mut. Ins. Co.,* 281 N.W.2d 700 (Minn. 1979).

493; *see also Shelter*, 930 S.W.2d at 573–74. While the *Jones* court acknowledged the drawbacks discussed above, 430 A.2d at 492, it found that it could read the insurance policies at issue in *Jones* in harmony such that it was clear which insurance was primary and which was excess,[7] *see id*. at 494.

The *Jones* court's task was to interpret "other insurance" clauses in two insurance policies—one policy (referred to by the court as the "Globe policy") contained a pro rata clause and the other (referred to by the court as the "INA policy") included an excess clause. *Id*. Specifically, Globe's pro rata clause stated:

> If the insured has other insurance against a loss covered by this policy. . . the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability. . . bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

*Id*. at 490. The excess provision in the INA policy provided that "[t]he insurance afforded (by this policy) shall be excess insurance over any other valid and collectible insurance." *Id*. In determining that the Globe policy was primary, the court reasoned:

> We consider that Globe's pro rata clause and INA's blanket excess clause are not irreconcilable. Globe's provision contemplates contribution from all other valid and collectible insurance. INA is not collectible insurance for this purpose because INA's blanket excess clause expressly states that it will not pay if the claim is covered by any other valid and collectible insurance and does not exceed the policy limit of that other insurance. Globe is collectible insurance under INA's clause because it states that it will pay the claim in any event, subject to any applicable pro rata contribution. The Globe contract does not foresee the possibility that another insurance policy should

---

[7] We note there are critics who argue that both approaches are flawed because contract principles are inadequate to resolve these disputes. Randall, *supra*, at 1353. They reason that contractual disputes involve the actual parties to the insurance contract—the insurer and the insured—whereas, these disputes primarily involve insurers who are not in a contractual relationship. *Id*. at 1353–54. Thus, focusing solely on the four corners of the insurance contract and on the intent of the parties thereto—the insurer and the insured—will often lead to the wrong conclusion regarding the proper coordination of insurance benefits. *Id*.

These critics further argue that if the goal is a proper allocation of responsibility for the injury or loss, ideally, the insurer who receives premium payments that most accurately reflect the insured risks should also primarily bear responsibility for the loss. *Id*. at 1368. "In casting the issues in narrow contract terms, courts ignore what should be the decisive factors in allocating responsibility: the nature, scope, and function of the applicable coverages, as evidenced by the policy and extrinsic evidence of underwriting intent." *Id*. at 1342.

> constitute only excess coverage and does not provide for this possibility in its other insurance clause. Thus, applied together, the two policies result in Globe being liable for any claim up to its policy limit, with INA picking up any excess.

*Id*. at 494.

In examining Tennessee jurisprudence, the *Shelter* court found that Tennessee had applied both approaches. *Shelter*, 930 S.W.2d at 573–74. Specifically, in *Commercial Union Insurance Company. v. Universal Underwriters Inc*., 442 S.W.2d 614, 618 (Tenn. 1969), the Tennessee Supreme Court explicitly adopted the holding in *Lamb-Weston*, and without examining the language in the two policies, it deemed them repugnant and prorated the damages. But the Tennessee Supreme Court subsequently backed off of this blanket rule in *Continental Insurance Company v. Excel Insurance Company*, 541 S.W.2d 952, 954 (Tenn. 1976). In that case, after reading the two policies together, the Court concluded that the "other insurance" clauses at issue were not repugnant and designated one primary and the other excess. *Id*.

After examining the foregoing cases, the *Shelter* court found the majority view— the approach in *Jones*—to be the better of the two approaches.[8] *Shelter*, 930 S.W.2d at 574. Accordingly, it examined the "other insurance" provisions at issue, and determined that the insurance policy containing the pro rata clause was intended as primary and the other was excess:[9]

> By a plain reading of the written terms of Shelter's policy, [which contains the pro rata clause] it is clear that Shelter's policy will always provide primary coverage for an insured event. We contrast this plain language of the Shelter policy whereby, in the event any other insurance exists, State Farm's coverage will be deemed excess only.

*Id*.

---

[8] The *Shelter* court was persuaded, in part, by the legislative history leading up to the enactment of Tenn. Code Ann. § 56-7-1101, which concerned motor vehicle insurance. 930 S.W.2d at 574. The *Shelter* court found that the legislative discussions around this statute "demonstrate[d] the General Assembly's desire that the courts attempt to apply the provisions of insurance policies as they are written." *Id*.

[9] In applying this approach, courts have developed a series of "clause-matching rules." *See* Randall, *supra*, at 1350–51. In cases of pro rata/excess and pro rata/escape pairings, the pro rata policy is usually deemed primary. *Id*.; *see generally* David P. Van Knapp, Annotation, *Resolution of Conflicts, in Non-Automobile Liability Insurance Policies, Between Excess or Pro Rata "Other Insurance" Clauses*, 12 A.L.R.4th 993 (Originally published in 1982). When there are two escape clauses or two excess clauses, the clauses are deemed void and damages are prorated; however, the rules vary when the case involves excess/escape pairings. Randall, *supra,* at 1351.

Following the reasoning in *Shelter* that "other insurance" clauses are not necessarily repugnant, and coverage disputes should be resolved on a case by case basis, we shall construe each "other insurance" clause in this case and give effect to the contracting parties' intent by focusing on the plain and ordinary meaning of the words. *Merrimack Mut. Fire Ins. Co.*, 59 S.W.3d at 148.

When "the disputed provision is susceptible of more than one plausible meaning, the meaning favorable to the insured controls." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012). If both policies contain similar "other insurance" provisions, the clauses are mutually repugnant to one another and they will be deemed void in favor of a proration of damages. *United Services*. 414 S.W.2d at 840.

As a preliminary matter, we note that the "other insurance" clauses here are different from the clauses at issue in *United Services* and each other. *Id*. at 837–38. As previously stated, both insurance policies in *United Services* contained blanket excess clauses with language so similar that the Tennessee Supreme Court could not reconcile them. *Id*. at 840. In this case, however, we have determined that it is possible to read the clauses in harmony to determine which insurance was intended as the primary insurance.

The "other insurance" clause in the Farmer's Mutual policy states:

## Other Insurance

Insurance provided by this endorsement is excess over any other insurance and will apply only if the limits of all other insurance have been exhausted solely by payment of loss. However, if other insurance is specifically written as excess insurance over the insurance provided by this endorsement, the limits of this insurance shall apply first.

Significantly, Sentry's policy is not ***specifically written*** as excess insurance over the Farmer's Mutual policy. The Sentry policy reads in pertinent part:

### F. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss

- 10 -

or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

Thus, under subsection one, Sentry will pay a pro rata share of the claim when the other insurance contains the same terms and conditions as the Sentry policy. Like the pro rata clauses in *Jones* and *Shelter*, we find that, under subsection one, Sentry implies that it is written as primary because it will pay the claim subject to any applicable pro rata contribution. *See Jones*, 430 A.2d at 494. Accordingly, we do not read subsection one as contemplating circumstances where the other insurance is strictly excess because it assumes the other insurance will, likewise, pay a pro rata share.

That said, Sentry argues that subsection two, rather than subsection one, applies because the Farmer's Mutual policy contains different terms and conditions. But, regardless, we give the term "other insurance" the same interpretation in subsection two. In subsection two, Sentry provides that, in the event the other insurance contains different terms and conditions than the Sentry policy, Sentry will pay the amount "in excess of the ***amount due*** from that other insurance." (Emphasis added). This assumes that the other insurance, by its terms, will pay first. In other words, like subsection one, subsection two does not contemplate circumstances where the other insurance is written strictly as excess because such a policy would not pay first in any event. Thus, we cannot give Sentry's "other insurance" clause, as a whole, a plausible reading if the "other insurance" to which it refers is written as excess.

Based on the foregoing analysis, we conclude that the Farmer's Mutual policy is written strictly as excess because it plainly states that it "is excess over ***any*** other insurance" and will apply "***only*** if the limits of all other insurance have been exhausted;" it will not pay otherwise. (Emphasis added). Because the Farmer's Mutual policy is strictly excess, it is not "other insurance" as contemplated by the Sentry policies, and the limitations in Sentry's "other insurance" clause do not apply.

Accordingly, we conclude that Sentry is primary and Farmer's Mutual is excess, and we thus affirm the trial court's decision to grant summary judgment to Farmer's Mutual, albeit on different grounds, and to deny Sentry's motion.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Sentry Select Insurance Company.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 11 -